[Cite as *Workman v. Ohio Dept. of Ins.*, 2012-Ohio-4809.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| | | JUDGES: |
| VAN A. WORKMAN | : | Hon. Patricia A. Delaney, P.J. |
| | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellant | : | Hon. William B. Hoffman, J. |
| | : | |
| -vs- | : | |
| | : | Case No. 2012-CA-21 |
| OHIO DEPARTMENT OF | : | |
| INSURANCE | : | |
| | : | O P I N I O N |
| Defendant-Appellee | | |

CHARACTER OF PROCEEDING:     Administrative appeal from the Richland County Court of Common Pleas, Case No. 2011-CV-0972D

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     October 17, 2012

APPEARANCES:

For Plaintiff-Appellant             For Defendant-Appellee

TIMOTHY FITZGERALD
6th Floor, Bulkley Building
1501 Euclid Avenue
Cleveland, OH 44115

MIKE DEWINE
SCOTT MYERS
30 East Broad Street, 26th Floor
Columbus, OH 43215

*Gwin, J.,*

{¶1} Plaintiff Van A. Workman appeals a judgment of the Court of Common Pleas of Richland County, Ohio, entered in favor of defendant-appellee Ohio Department of Insurance on appellant's administrative appeal from appellee's revocation of the appellant's Ohio Insurance Agent License. Appellant assigns a single error to the trial court:

{¶2} "THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN AFFIRMING THE ORDER OF THE OHIO DEPARTMENT OF INSURANCE PERMANENTLY REVOKING PLAINTIFF-APPELLANT VAN A. WORKMAN'S INSURANCE LICENCE WHERE (1) THERE WAS A COMPLETE LACK OF RELIABLE, PROBATIVE, AND SUBSTANTIAL EVIDENCE ESTABLISHING A VIOLATION BY PLAINTIFF-APPELLANT VAN A. WORKMAN OF R.C. §3905.14(B)(9) AND (2) THE TRIAL COURT'S REFUSAL TO EXAMINE THE PERMANENT REVOCATION SANCTION WAS NOT IN ACCORDANCE WITH LAW."

{¶3} The record demonstrates appellant unsuccessfully pursued his appeal through the administrative process and exhausted his administrative remedies. He then appealed the matter to the Richland County Common Pleas Court.

{¶4} The Common Pleas Court correctly recited its standard of reviewing the appeal pursuant to R.C. 119.12. The court found it must consider the entire record and any additional evidence it may have admitted to determine whether the order is supported by reliable, probative, and substantial evidence and is in accordance with law.

{¶5} Our standard of review is also set forth in R.C. 119.12. The statute directs us to review and determine the correctness of the judgment of the Court of Common

Pleas regarding whether the order of the agency is supported by any reliable, probative, and substantial evidence in the entire record. In doing so we apply the abuse of discretion standard. *University of Cincinnati v. Conrad,* 63 Ohio St. 2d 108, 407 N.E. 2d 1265, citing *Rossford Exempted Village School District Board of Education v. State Board of Education,* 63 Ohio St. 3d 705, 707, 590 N.E. 2d 1240 (1992). The term "abuse of discretion" implies that the court's attitude was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶6} The trial court discussed the facts in its judgment entry of February 17, 2012. The court found appellee Ohio Department of Insurance ("ODI") licensed Employer Benefit Services of Ohio, Inc. ("EBS") as a third-party administrator in the health insurance field. EBS's business was primarily to administer benefits for employers who had self-funded or partially self-funded health care plans. Its services included processing claims, paying claims, and servicing customers. In addition, EBS occasionally acted as a broker for clients looking for new or replacement stop-loss insurance for the health insurance plans. Stop-loss insurance covers claims which exceed the amount of self-insurance funds set aside by the employer to pay the medical claims of its employees.

{¶7} Appellant was the primary agent of EBS and owned ninety percent of its common stock. The Superintendent of Insurance found he and his corporation engaged in two types of misconduct with regard to brokering stop-loss insurance. The Superintendent found appellant had convinced his clients to purchase a product which was not approved as stop-loss insurance and which did not adequately protect the clients from financial loss. Secondly, the Superintendent found appellant modified the

insurance quotes from the stop-loss provider to his clients and the applications from his clients back to the stop-loss provider without their knowledge or permission.

{¶8} The court set out the names of three clients which ODI found appellant's practices had injured: Brown Publishing, a newspaper publisher in Cincinnati employing 600 people; OMNI Manufacturing, a metal stamping company in Marysville, employing 110 people, and The Delaware County Board of Developmental Disabilities in Delaware, Ohio.

{¶9} Appellant learned of a business in Texas called United Re. Although its name implied it was in the reinsurance business, United Re was actually a trust and did not insure risks. It accepted employer contributions, paid employee claims from the employer funds and at the end of the year either returned any excess of contributions to the employer or billed the employer for any short falls. The court found because of this, the employer who participated in the trust still remained its own stop-loss insurer.

{¶10} The court found that at some point United Re added a type of stop-loss insurance feature to its basic trust product. The company United Re chose to provide stop-loss insurance to the trust was VADO, which was allegedly an insurer engaged in real estate investment in the Grand Caymans and trading actively in Dubai. Neither United Re nor VADO was licensed to sell insurance in Ohio.

{¶11} Appellant placed all three of the above clients with the United Re Trust using VADO as reinsurer. All the clients eventually experienced problems with the payment of their employees' claims.

{¶12} When Brown Publishing experienced problems, appellant moved its account from United Re to HCC Life, an insurance company that is approved by the

ODI. When an administrative employee of Brown Publishing was speaking with HCC Life, the employee discovered appellant had been modifying the quoted rates in the insurer's quote to Brown Publishing, and then modifying the accepted rates in Brown Publishing's application to the insurer. HCC terminated its business relationship with EBS and appellant.

{¶13} The ODI then investigated appellant and found that he, on behalf of EBS, had modified quotes and acceptances between United Re and each of the three clients listed above. In each case, appellant took low quotes from the insurer, added an additional amount as a commission to EBS, and then relayed the higher rates to its clients. When the client accepted the proposed rates and applied for coverage, appellant changed the rates back to the original number before returning the application to the insurer. The modifications in the premium rates ranged from a low of 52% to a high of 213% of the original insurer's quotes.

{¶14} The trial court found pursuant to R.C. 3905.14, the Superintendent of Insurance may suspend or revoke an insurance agent's license for fraudulent, coercive, or dishonest practices, or if the agent demonstrates incompetence, untrustworthiness, or financial irresponsibility, in the conduct of business in Ohio or elsewhere.

{¶15} The trial court found the Superintendent and her Hearing Officer concluded appellant had violated R.C. 3905.14 by failing to use diligence in selecting appropriate and adequate stop-loss insurance coverage for the partially self-funded employer health insurance programs of OMNI, Delaware and Brown, and secondly manipulating and altering the documents so as to conceal and deceive these clients so

they would not know the amount of commissions EBS was charging for the stop-loss coverage portion of their partially self-funded health insurance programs.

**{¶16}** The Common Pleas Court found based upon the entire record that ODI's findings and the suspension of appellant's license are supported by reliable, probative, and substantial evidence, and are in accord with law. The court found the large EBS commissions of 52% to 213%, on top of the underlying premium, suggest appellant's motive was to find an unconventional cheaper stop-loss product. Finding such a product and concealing its actual cost from a client would allow EBS to charge such large commissions without being found out either by its customers or its stop-loss provider.

**{¶17}** The court also found the Superintendent's conclusion that EBS's conduct violated R.C. 3959.14 was supported by sufficient evidence in the record. R.C. 3959.14 prohibits a third party administrator from failing to disclose in writing on an on-going basis to the plan sponsor client all fixed plan costs and the name of all insurance carriers providing coverage. The court found the record showed EBS did not tell the three clients the actual cost of United Re's stop-loss coverage or that the name of the insurance carrier that provided overlay coverage for the United Re Trust stop-loss program was VADO. The court affirmed the Superintendent of Insurance's order revoking appellant's insurance license.

**{¶18}** Appellant's brief divides his assignment of error down into subparts. The first is whether the trial court abused its discretion in affirming ODI's finding that appellant had violated R.C. 3905.14 by failing to use due diligence in selecting United Re to provide stop-loss coverage for partially self-funded employer health insurance

programs of EBS clients because the ODI presented no reliable, probative, and substantial evidence defining the legal standard of due diligence.

{¶19} Appellant argues both he and his employee Frank V. Flaugher both testified about the investigation EBS conducted before selecting United Re to provide coverage for its clients. The investigation included going to United Re's offices in Texas to personally meet with United Re's officers. Appellant's expert witness testified companies like EBS are often not in a position to know which re-insurance carriers are involved, although it is possible such companies could ask for the information. The expert testified the re-insurer often changes.

{¶20} ODI responds appellant owed a fiduciary duty to his customers to exercise good faith and reasonable diligence in seeking the coverage they needed. *Damon's Missouri, Inc. v. Davis,* 63 Ohio St. 3d 605, 590 N.E. 2d 254 (1992). ODI argues appellant's clients indicated stop-loss coverage was essential to continue their business operations. Appellant represented to his clients he had secured stop-loss coverage, but, initially United Re did not provide stop-loss insurance nor did VADO. ODI argues any investigation EBI conducted came from sources with a financial interest in securing its business. United Re paid in part for a trip to its headquarters to meet with company officers. United Re selected a stop-loss carrier that was involved in off-shore and middle-eastern enterprises and kept the identities of their shareholders confidential, which ODI argues should have raised flags with any reasonable professional. Appellant did not check to see if United Re and VADO are licensed to do business in Ohio and they were in fact not licensed.

{¶21} We find the record contains probative and substantial evidence appellant did not use any diligence in procuring the insurers. The court did not abuse its discretion.

{¶22} Appellant's second argument is that the trial court erred in affirming ODI's finding that he violated R.C. 3905.14 for concealing commissions from his clients. Appellant argues Brown Publishing's representative testified it was understood that EBS would receive a commission. Appellant argues there is no duty to disclose the commissions paid to an insurance agent, and for this reason, the trial court should not have found appellant had acted fraudulently. ODI responds appellant was under no duty to disclose commissions, but he altered documents both from United Re's side of the transaction and from his clients.

{¶23} The Superintendent of Insurance did not find misappropriation or fraud, but found appellant's actions demonstrated he was dishonest, incompetent, untrustworthy, or irresponsible. While it is true the clients believed EBS would be compensated for its efforts, the mere act of tampering with the contracts in an obvious attempt to conceal how much of the quote was for the insurance premium and how much represented EBS's commission speaks for itself.

{¶24} Finally, appellant argues the trial court erred in affirming the permanent revocation of his insurance license rather than suspending it for a definite period with the right to reapply for reinstatement within 180 days. The trial court found it had no authority to review the sanction ODI had imposed.

{¶25} In *State Medical Board of Ohio v. Murray,* 66 Ohio St. 3d 527, 538, 613 N.E. 2d 636, the Supreme Court found if the trial court determines the administrative

agency's decision was supported by reliable, probative, and substantial evidence, then the court should not reverse or modify the order unless the penalty imposed by the agency was not in accord with law.

{¶26} We conclude the Court of Common Pleas did not abuse its discretion in finding the administrative decision is supported by reliable, probative, and substantial evidence and is in accord with law. We find the trial court properly declined to modify the penalty imposed by ODI.

{¶27} The assignment of error is overruled.

{¶28} For the foregoing reasons, the judgment of the Court of Common Pleas of Richland County, Ohio, is affirmed.

By Gwin, J.,

Delaney, P.J., and

Hoffman, J., concur

_____
HON. W. SCOTT GWIN

_____
HON. PATRICIA A. DELANEY

_____
HON. WILLIAM B. HOFFMAN

WSG:clw 0927

[Cite as *Workman v. Ohio Dept. of Ins.*, 2012-Ohio-4809.]

IN THE COURT OF APPEALS FOR RICHLAND COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| VAN A. WORKMAN | : | |
| | : | |
| Plaintiff-Appellant | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| OHIO DEPARTMENT OF INSURANCE | : | |
| | : | |
| | : | |
| Defendant-Appellee | : | CASE NO. 2012-CA-21 |


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Richland County, Ohio, is affirmed. Costs to appellant.


_____
HON. W. SCOTT GWIN


_____
HON. PATRICIA A. DELANEY


_____
HON. WILLIAM B. HOFFMAN